**ILLINOIS CONSTRUCTORS CORPORATION, a corporation, Plaintiff,**

v.

**MORENCY & ASSOCIATES, INC., a corporation, d/b/a/ Morency, Weible & Sapa, Defendant.**

**No. 92 C 2738.**

United States District Court, N.D. Illinois, E.D.

July 20, 1992.

Terrence James Goggin, Robert Emmett Mahoney, Edwin J. Hull, III, Goggin, Cutler, Hull & Hartigan, Chicago, Ill., Frank J. Dantone, Jr., Edward D. Lamar,

Henderson, Dantone & Hines, Greenville, Miss., for plaintiff.

Willis Rollin Tribler, Michael Joseph Meyer, Tribler & Orpett, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendant Morency & Associates, Inc., d/b/a Morency, Weible & Sapa ("Morency") to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The court denies the motion for the reasons set forth below.

## FACTS

On December 22, 1991, the tugboat M/V Dutch Gap sank in the Mississippi River, discharging diesel fuel into the river. Plaintiff Illinois Constructors Corporation ("Illinois Constructors"), the owner of the vessel, engaged the services of various entities to clean up the pollution in the Mississippi River and along the adjoining river bank. According to the complaint, Morency is an insurance broker Illinois Constructors hired to secure insurance for its business operations. Morency negotiated an Ocean Marine Insurance contract for Illinois Constructors which failed to provide for pollution coverage. As a result, Illinois Constructors had no protection from claims arising out of the spill or coverage indemnifying it for money expended for clean-up.

On April 24, 1992, Illinois Constructors brought suit against Morency alleging breach of contract, negligence, and breach of fiduciary duty, invoking this court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333(1) and Fed.R.Civ.P. 9(h). Morency filed the present motion to dismiss claiming that Illinois Constructors's claim is essentially seeking damages for Morency's failure to procure pollution coverage and that such a claim is not within the admiralty jurisdiction of this court.

## DISCUSSION

Lack of subject matter jurisdiction is appropriately raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(1). *Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir. 1989), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). Federal district courts possess power over admiralty and maritime cases under 28 U.S.C. § 1333(1), including jurisdiction over contracts relating to " 'the navigation, business, or commerce of the sea.' " *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198–99, (2d Cir.1992) (quoting *DeLovio v. Boit*, 7 F.Cas. No. 3, 776, p. 444 (C.C.D.Mass.1815) (Story, J.)). The parties do not dispute that federal admiralty jurisdiction includes maritime insurance policies. *See, e.g., Planned Premium Servs., Inc. v. International Ins. Agents, Inc.*, 928 F.2d 164, 165 (5th Cir. 1991); *Organ. v. Conner*, 792 F.Supp. 693, 695–96 (D.Alaska 1992). The sole issue presented is whether Illinois Constructors's agreement with Morency for the procurement of insurance for Illinois Constructors's tugboat falls within the ambit of federal court admiralty jurisdiction.

Until recently, disputes involving agency contracts for the performance of "preliminary services" relating to maritime business fell outside of the federal courts' admiralty jurisdiction. *See Planned Premium Servs.*, 928 F.2d at 167 (financing contract preliminary to obtaining maritime insurance not within admiralty jurisdiction); *E.S. Binnings, Inc. v. M/V Saudi Riyadh*, 815 F.2d 660, 663–64 (11th Cir.1987) (providing cargo solicitation, documentation services, financial services, and husbanding services to vessels by agent not under admiralty jurisdiction). This prohibition meant agreements to procure marine insurance were not part of admiralty jurisdiction. *See Angelina Casualty Co. v. Exxon Corp. U.S.A., Inc.*, 876 F.2d 40, 41 (5th Cir.1989) (agreement to procure marine insurance is not a maritime contract); *Paul Marsh, Inc. v. Edward A. Goodman Co.*, 612 F.Supp. 635, 638 (S.D.N.Y.1985) (same).

Last year, however, the United States Supreme Court altered the inquiry for agency contracts relating to maritime ser-

vices. The Court announced that, in determining admiralty jurisdiction for agency agreements purported to be within admiralty jurisdiction, district courts must examine "the subject matter of the agency contract" and assess "whether the services performed under the contract are maritime in nature." *Exxon Corp. v. Central Gulf Lines, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2071, 2077, 114 L.Ed.2d 649 (1991). In so holding, the Court stated that, where the nature and subject matter of two transactions "are the same as they relate to maritime commerce, if admiralty jurisdiction extends to one, it must extend to the other." *Id.* —— U.S. at ——, 111 S.Ct. at 2077.

Later cases have not provided an answer as to how this new standard applies to contracts for the procurement of insurance because most have not had the opportunity to discuss the effect the *Exxon* case may have upon prior precedent.[1] However, the "preliminary contracts" rationale can not be divorced from the rationale which the Supreme Court rejected in *Exxon* and thus it no longer controls the inquiry. *See Venezuelan Container Line C.A. v. Navitran Corp.,* 792 F.Supp. 1281, 1282–84 (S.D.Fla. 1991) (relying on new approach declared in *Exxon,* general agency contract involving various preliminary services fell within federal admiralty jurisdiction). A contract will be considered maritime if there exists " 'a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry....' " *Id.* 792 F.Supp. at 1283

(quoting 1 *Benedict on Admiralty* § 182 (7th ed. 1991)).

This court is cautious to open the courthouse doors to a surge of litigation concerning transactions that may only tangentially involve a maritime business or ship owner merely because one is a party in the dispute. Nevertheless, analyzing the subject matter of the present agreement to procure maritime insurance and the relationship between the parties with a view toward protection of maritime commerce, the court concludes that the agreement falls within that jurisdictional grant. The overall nature of the underlying marine insurance policy here is clearly within the admiralty jurisdiction of this court. Further, a vessel owner's use of brokers for the procurement of such insurance is not only customary but is nearly indispensable for the insured owner's benefit. *Connecticut Fire Ins. Co. v. Davison Chem. Corp.,* 54 F.Supp. 2, 6 (D.Md.1944).

The obligation to secure insurance which contains pollution coverage for a vessel is integral to the maritime activities of the vessel. The importance of insurance for maritime operations is evident in view of the devastation to maritime commerce that accidents at sea engender and the protection insurance may afford shipowners from the overwhelming costs of clean-up. *See In re Oil Spill by the Amoco Cadiz,* 954 F.2d 1279 (7th Cir.1992) (220,000 tons of crude spilled into sea damaging 180 miles of French tourist and fishing regions). Further, the court agrees that "[t]here is no substantial basis for holding that agreements to procure marine insurance are

---

1. For instance, the U.S. District Court for the Eastern District of Louisiana has had various occasions to decide whether a claim for failure to obtain proper maritime insurance coverage falls within federal court admiralty jurisdiction, but instead concluded that the claims had invoked federal court supplemental jurisdiction. *See Williams v. Fa–Con, Inc.,* Civil Action No. 89–3400 C/W 89–5042 C/W 91–510 Section "G", 1992 WL 59435, 1992 U.S.Dist. LEXIS 3410 at *1 (E.D.La. March 13, 1992) (third-party claim for failure to obtain the proper insurance fell under supplemental jurisdiction); *Rebstock v. Sonat Offshore Drilling, Inc.,* Civil Action No. 90–3902, 1991 WL 255401, 1991 U.S.Dist. LEXIS 16870 at *7–8 (E.D.La.Nov. 19, 1991) (third-party com-

plaint alleging failure to secure coverage came under court's pendant party jurisdiction); *see also Habans v. Glover,* Civil Action No. 89–2761 Section "K", 1992 WL 125372, 1992 U.S.Dist. LEXIS 7262 at *16 (E.D.La. May 15, 1992) (contract to procure a charter for a ship not maritime in nature). *But see In re American Cyanamid Co.,* Civil Action No. 87–0742 consolidated with Civil Action No. 87–3998, 1991 WL 197208, 1991 U.S.Dist. LEXIS 13624 at *17 n. 3 (E.D.La. Aug. 14, 1991) (parties agreed that third-party "gap" coverage claim against insurance underwriters was admiralty claim, although court noted issue was unsettled after *Exxon;* court had supplemental jurisdiction over the claim anyway).

not—or at least may not in a particular case be—connected with and an aid to navigation or maritime commerce...." 7A J. Moore, *Moore's Federal Practice* ¶ .255[2] (2d ed. 1988). In the wake of *Exxon*, and mindful of *Amoco*, the court finds that the present agreement for the procurement of a maritime insurance policy falls under the admiralty jurisdiction of the federal courts.

## CONCLUSION

For the reasons stated above, the court denies Morency's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

IT IS SO ORDERED.