**Thao DAO, Plaintiff,**

v.

**KNIGHTSBRIDGE INTERNATIONAL REINSURANCE CORPORATION, Shaw International, Eton Management Corporation, Graham Haywood, Financial Solutions, Inc., Jim Haynie, The Marine Surveyors, Inc., and Kevin R. Grumt, Defendants.**

No. CIV.A. 97–1396.

United States District Court, D. New Jersey.

Aug. 5, 1998.

Thomas Rossi, Rossi, Barry, Corrado, Grassi & Radell, P.C., Wildwood, NJ, for Plaintiff, Thao Dao.

Scott A. Lazar, James E. Mercante, Kroll & Tract, L.L.P., Newark, NJ, for Defendants, Knightsbridge International Reinsurance Corporation, Shaw International, Eton Management Corporation, and Graham Haywood.

Gerard H. Hanson, Hill Wallack, Princeton, NJ, for Defendant, The Marine Surveyors, Inc.

## OPINION

ORLOFSKY, District Judge.

This admiralty case presents several thorny procedural and jurisdictional questions which are far more complicated than the parties originally realized. The Court is now required to sort through the complexities of the law governing removal of admiralty cases, and the jurisdictional consequences of a waiver of improper removal in order to decide the Plaintiff's motion to transfer this action to the Eastern District of Virginia or, in the alternative, for the entry of final judgment as to those Defendants against whom the Amended Complaint has been dismissed for lack of personal jurisdiction, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, I conclude that the Court may exercise admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over most of the claims in this action and supplemental jurisdiction over the remaining claims, notwithstanding any procedural defects in the removal of this action from state to federal court.

With respect to the motion to transfer, the Court will, pursuant to Rule 21, sever the Counts of the Amended Complaint alleging causes of action against Defendants, Knightsbridge International Reinsurance Corporation, Shaw International, Eton Management Corporation, Graham Haywood, Financial Solutions, Inc., and Jim Haynie, i.e., Counts One, Two, Three, and Six, and transfer those

Counts as a separate action to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). I shall retain jurisdiction over Counts Four and Five which allege causes of action against Defendants, Marine Surveyors, Inc. and Kevin R. Grumt. Finally, the motion for the entry of final judgment pursuant to Rule 54(b) will be dismissed as moot.

## I. Facts and Procedural Background

Sometime prior to November 7, 1995, Plaintiff, Thao Dao ("Dao"), arranged for adequate insurance coverage for his steel fishing vessel, the Lady Luck, which at that point was being refurbished. *See* Amended Complaint ¶¶ 9–10 (dated Apr. 21, 1997) (hereinafter Amended Compl.). Plaintiff arranged this insurance through Defendants, Financial Solutions ("Financial Solutions") and Jim Haynie ("Haynie"). *Id.* at ¶¶ 8–9. Dao was informed by Financial Solutions and Haynie that they had arranged for adequate hull and other insurance for the Lady Luck. *Id.* Apparently, Financial Solutions and Haynie arranged for Defendant, Knightsbridge International Reinsurance Corporation ("Knightsbridge"), to issue Policy No. OCMT16.00175 (the "Policy") for the Lady Luck. *Id.* at ¶¶ 3, 12, 17. The Policy covered the period from November 7, 1995, to November 7, 1996. *Id.* at ¶ 3.

At the instruction of Financial Solutions and Haynie, Plaintiff arranged for a survey of the Lady Luck to be conducted by Defendant, the Marine Surveyors, Inc. ("Marine Surveyors") before engaging in fishing operations. *Id.* at ¶¶ 10–12. The survey was conducted by an agent and employee of Marine Surveyors, Defendant, Kevin R. Grumt ("Grumt"), in approximately May, 1996. *Id.* at ¶ 22.

On or about May 13, 1996, Grumt advised Haynie that the vessel's condition was consistent with industry standards, but never produced a final copy of the survey to Haynie or Financial Solutions, despite his indication that he would provide such a written report. *Id.* at ¶¶ 22–24. On or about May 14, 1996, Haynie advised Dao that, *inter alia,* Haynie and/or Financial Solutions had received a notice that the required survey had been completed. Consequently, Haynie advised Dao that the Lady Luck could now be used to conduct fishing operations. *Id.* at ¶ 12. Sometime after May 14, 1996, the ship began to be employed in those operations. *Id.*

On or about August 11, 1996, the Lady Luck sank and was destroyed approximately seventy miles off the coast of New Jersey. *Id.* at ¶ 4. The claimed value of the vessel is $175,000. *Id.* Although Plaintiff submitted a proof of loss for the full value of the vessel, *id.* at ¶ 5, no part of the loss has been paid by Knightsbridge or Defendants, Shaw International ("Shaw"), Eton Management Corporation ("Eton"), and Graham Haywood ("Haywood"), allegedly managers, subsidiaries, successors in interest, or the alter egos of Knightsbridge. *See id.* at ¶¶ 2, 30–31. *But see* Affidavit of Nam Ngoc Huynh ¶ 5 (dated Sept. 24, 1997) (hereinafter Huynh Aff.) (averring that Shaw and Haywood are underwriters of the insurance policy issued by Knightsbridge).

On or about February 5, 1997, Dao filed a Complaint in the Superior Court of New Jersey, Law Division, Cape May County, alleging five causes of action against Defendants. *See Dao v. Knightsbridge Int'l Reins. Corp., et al.,* Complaint, Docket No. CPM–L–71–97 (dated Feb. 3, 1997) (hereinafter Compl.). In particular, Dao alleged a cause of action against Knightsbridge, Shaw, Eton, and Haywood for breach of a marine insurance contract. *See* Compl. at ¶¶ 2–3. Second, Dao alleged a cause of action against Financial Solutions and Haynie for breach of a contract to procure marine insurance for the Lady Luck. *Id.* at ¶¶ 17–18. Third, Dao alleged a cause of action against Financial Solutions and Haynie for negligence in failing to procure adequate marine insurance for the Lady Luck. *Id.* at ¶¶ 14–15. Fourth, Dao alleged a cause of action against Marine Surveyors and Grumt for breach of a contract to survey the Lady Luck and report the results of that survey. *Id.* at ¶¶ 23–25. Finally, Dao alleged a cause of action against Marine Surveyors and Grumt for negligence in failing to properly report the results of their survey of the Lady Luck. *See id.* at ¶¶ 27. In the initial Complaint, Dao demanded a jury trial. *See id.* at p. 9.

On March 18, 1997, pursuant to 28 U.S.C. § 1446(a), Knightsbridge, Shaw, Eton, and Haywood filed a Notice of Removal in this Court alleging that this Court could exercise jurisdiction over this action pursuant to 28 U.S.C. § 1333(1), which provides for original, exclusive jurisdiction "of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1331(1); *see* Notice of Removal ¶¶ 4–5 (dated March 18, 1997). The Notice of Removal explained why Financial Solutions, Haynie, Marine Surveyors, and Grumt had not joined in the motion, noting that "no other party defendant [had] been served with the ... Complaint." *See* Notice of Removal ¶ 10 (dated Mar. 18, 1997); *see generally Balazik v. County of Dauphin*, 44 F.3d 209 (3d Cir.1995) (discussing need for unanimity among removing defendants); 16 James Wm. Moore, *et al.*, *Moore's Federal Practice* § 107.11[c-d] at 107–31 to 107–34 (3d ed.1998). No party opposed removal.[1]

On April 22, 1997, Dao filed an Amended Complaint and, as he did in his Complaint, demanded a jury trial "as to all issues in [this] matter." Amended Compl. at p. 9. The Amended Complaint essentially realleges the five causes of action originally alleged in the Complaint, except that it adds a cause of action against Knightsbridge, Shaw, Eton, and Haywood for breach of the marine insurance contract. *See id.* at ¶¶ 30–31. This cause of action is to a large extent duplicative of the first cause of action. *Compare id.* at ¶¶ 3–6 *with id.* at ¶¶ 30–31. On May 19, 1997, Marine Surveyors answered the Amended Complaint, and asserted cross-claims against all co-Defendants for indemnity and contribution. *See* Answer of Marine Surveyors, Inc. 5 (dated May 19, 1997). Marine Surveyors demanded a jury trial "as to all issues." *Id.*

On the motion of Knightsbridge, Shaw, Eton, and Haywood, the Court dismissed the Amended Complaint as against Knightsbridge, Shaw, Eton, and Haywood for lack of personal jurisdiction over those Defendants. *See Dao v. Knightsbridge Int'l Reins. Co., et al.*, Civil Action No. 97–1396, Opinion at 2, 12 (dated July 3, 1997) (hereinafter 7/3/97 Opinion); *see generally Silva v. City of Madison*, 69 F.3d 1368, 1376 (7th Cir.1995) (holding that filing of removal petition does not constitute waiver of objection to personal jurisdiction), *cert. denied*, 517 U.S. 1121, 116 S.Ct. 1354, 134 L.Ed.2d 522 (1996). The Court also denied Dao's cross motion to transfer the action "to some other District Court which may be found to be the appropriate Court for locating" the action. 7/3/97 Opinion at 12 n. 2. Dao has now moved to transfer this action to the Eastern District of Virginia, or, in the alternative, for the entry of final judgment as to the Defendants against whom the Amended Complaint had been dismissed, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

After the motion was initially filed, on January 6, 1998, I requested in a letter that the parties submit additional briefs on various issues of removal, jurisdiction, and transfer. *See* Letter (dated Jan. 6, 1998). The letter was extremely detailed in the questions to which the Court wanted answers. In order to facilitate and focus the legal research of counsel, the letter cited numerous cases and several treatises.[2] I turn to the removal and jurisdiction issues raised by my letter, before resolving the motion to transfer this case to the Eastern District of Virginia.

## II. Discussion

### A. Removal and Waiver of Improper Removal

In my letter to the parties, I asked whether this case had been properly removed to this Court. In particular, I asked whether removal was proper in light of the holding in *Romero v. International Terminal Operat-*

---

1. As of the date of this Opinion, Financial Solutions, Haynie, and Grumt have not yet moved, answered, or otherwise responded to the Amended Complaint.

2. Of course, the cases cited in the letter were not meant to be an exhaustive list of the only rele-

vant authorities to which the parties should refer. *See, e.g.*, Brief of Defendants Knightsbridge International Reinsurance Corp., *et al.* (dated Jan. 23, 1998) (hereinafter Knightsbridge's Brief); Dao's Brief (dated Jan. 22, 1998).

*ing Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). That case held, among other things, that removal to federal court of a case filed in state court under the "saving to suitors" clause is not proper where the only basis for federal jurisdiction is admiralty jurisdiction under section 1333(1). *See, e.g., Servis v. Hiller Sys., Inc.,* 54 F.3d 203, 207 (4th Cir.1995) (noting that "[a]dmiralty and maritime cases may … be removable to federal court when there exists some independent basis for federal jurisdiction, such as diversity of citizenship or when federal jurisdiction is independently established by a federal maritime statute") (citations omitted), *cert. denied,* 516 U.S. 1084, 116 S.Ct. 799, 133 L.Ed.2d 747 (1996).

■ The removal of this action was procedurally defective because there was no basis for federal subject matter jurisdiction other than admiralty jurisdiction under section 1331(1). I may not, however, remand this action to state court. At this time, well after the 30–day period in which removal could have been opposed, *see* 28 U.S.C. § 1447(c), I lack the authority to remand this case *sua sponte.* As long as there is a proper basis for subject matter jurisdiction over a removed case, a district court may not remand a case to state court *sua sponte* after the thirty-day period during which the parties may move to remand a case to state court. *See Korea Exchange Bank v. Trackwise Sales Corp.,* 66 F.3d 46, 51 (3d Cir.1995) (noting that 30–day time limit for motion to remand to state court under 28 U.S.C. § 1447(c) applies to *sua sponte* orders to remand, and holding that "an irregularity in removal of a case to federal court is to be considered 'jurisdictional' only if the case could not have initially been filed in federal court"); *Air–Shields, Inc. v. Fullam,* 891 F.2d 63, 65–66 (3d Cir.1989); *see, e.g., Carroll v. United Air Lines, Inc.,* 7 F.Supp.2d 516, 520 (D.N.J.1998); *see generally* 16 *Moore's Federal Practice* § 107.41[1][ii] at 107–185. As I discuss below, Dao's claims could have been initially filed in federal court under the Court's admiralty jurisdiction and supplemental jurisdiction. Accordingly, no remand is appropriate.

■ It may be argued that the rule of *Romero* is jurisdictional itself, that is, that the district court may not exercise subject matter jurisdiction over a "saving to suitors" case which has been removed under admiralty jurisdiction under section 1333(1). This argument is incorrect. *Romero* does not affect the ability of the district court to exercise subject matter jurisdiction over an improperly removed case. The rationale of *Romero's* holding is that a defendant should not be able to deprive a plaintiff of its common law remedies being asserted in an action filed in state court under the "saving to suitors" clause by removing the case to federal court on the basis of admiralty jurisdiction. *See id.* 358 U.S. at 371–72, 79 S.Ct. 468 (noting negative effects of free removability); *see, e.g., Sea–Land Serv., Inc. v. J & W Import/Export, Inc.,* 976 F.Supp. 327, 329–30 (D.N.J.1997) (noting effect of "savings to suitors" clause and holding that removing defendant "should not be allowed to circumvent plaintiff's choice of forum and procedures by removing the case to federal court"); *Canino v. Londres,* 862 F.Supp. 685, 691 (D.N.H.1994) (remanding action to state court on plaintiff's motion where sole basis for subject matter jurisdiction following removal would have been admiralty jurisdiction); *Jenkins v. Moshulu Restaurant,* 1986 WL 12945 (E.D.Pa. Nov.17, 1986); *Superior Fish Co., Inc. v. Royal Globe Ins. Co.,* 521 F.Supp. 437, 440–41 (E.D.Pa.1981) (remanding case to state court and applying *Romero*).

*Romero* does not hold that the district cannot exercise subject matter jurisdiction over a "saving to suitors" case filed in state court and subsequently, but improperly, removed to federal court. Indeed, *Romero* specifically recognizes the existence of an alternative basis for subject matter jurisdiction following removal. Rather, *Romero's* holding is that admiralty actions are not "civil action[s] arising under the Constitution, treaties, or laws of the Unites States," 28 U.S.C. § 1331, and therefore, not removable either under a district court's federal question jurisdiction under section 1331, nor, by extension, freely removable under the first

sentence of section 1441(b).[3]  *Romero,* 358 U.S. at 377–379, 395, 79 S.Ct. 468; *Wheeldin v. Wheeler,* 373 U.S. 647, 665 n. 14, 83 S.Ct. 1441, 10 L.Ed.2d 605 (Brennan, J., dissenting) (noting scope of *Romero* holding); *Lewis v. United States,* 812 F.Supp. 620, 623 (E.D.Va.1992) (noting that *Romero* holding as to meaning of "arising under" in section 1331 is equally applicable to section 1441(b)); *see also* 1 Steven E. Friedell, *Benedict on Admiralty* § 132 at 8–60 to 8–63 (1998).

In other words, removal in violation of *Romero* is a *waivable defect in removal,* not a non-waivable limit on the district court's subject matter jurisdiction.  *See, e.g., Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1543 (5th Cir.1991), *cert. denied,* 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991); *Nielsen v. Weeks Marine Inc.,* 910 F.Supp. 84, 86 (E.D.N.Y.1995) (holding that improper removal of Jones Act case did not strip district court of subject matter jurisdiction); *Benjamin v. Natural Gas Pipeline Co. of Am.,* 793 F.Supp. 729, 732–33 (S.D.Tex.1992); *see generally* 1 *Benedict on Admiralty* § 132 at 8–83 to 8–64 & n. 11; 1 Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 4–3 at 136 (2d ed. 1994 & Supp.1997); 29 *Moore's Federal Practice* § 704.02 at 704–57 (noting that failure to object to improper removal waives right to remand); *cf. J. Aron & Co. v. Chown,* 894 F.Supp. 697, 701 (S.D.N.Y. 1995) (holding that court did not have jurisdiction over "saving to suitors" action commenced in state court and removed to federal court where original complaint indicated intention to bring common law contract action, not admiralty action, and did not allege facts indicating potential basis for exercise of admiralty jurisdiction upon removal).

■ Dao failed to oppose removal or to raise the fact that, at the time of removal, there was no basis for this Court's subject matter jurisdiction other than admiralty jur-

isdiction.  By doing so, Dao waived that set of rights he had claimed by filing his action in state court under the "saving to suitors" clause of section 1333(1), and instead consented to the exercise of admiralty jurisdiction and the application of admiralty procedures over those claims which are cognizable in admiralty.  As the Fifth Circuit has persuasively held in a procedurally similar case:

> As a consequence, these plaintiffs, having waived any objection to removal, are relegated to the admiralty jurisdiction of the federal district court, as that is the only jurisdictional basis for [their] claim in federal court, absent diversity or some other jurisdictional basis.  To be sure, that is not the forum that these plaintiffs have chosen, but such is the grist of the waiver mill.

> In summary, this is an action that the plaintiffs could have brought in federal court, in admiralty.  No special averment under [R]ule 9(h) would have been required because, [their] claim ... could have been brought only in admiralty, there being no diversity.  The point is that had the plaintiffs so chosen, the federal district court would have had original subject matter jurisdiction over the claim.  That is why, once any objection to removal was waived, the district court was able to retain jurisdiction.

> The plaintiffs answer that not only did they fail to invoke admiralty jurisdiction under [R]ule 9(h), but they also affirmatively invoked state court jurisdiction by means of the saving to suitors clause.  It is certainly true that the plaintiffs had the option, which they exercised, to file in state court.  It is no different from the option of many plaintiffs, in and out of the admiralty/maritime context, to select a forum.  But that selection, as always, is subject to any right of a defendant to remove and to the possibility that the plaintiff may waive

---

**3.** Section 1441(b) provides:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is

a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).  Because admiralty actions do not "aris[e] under the Constitution, treaties, or laws of the United States," they are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  *Id.;* 1 *Benedict on Admiralty* § 132 at 8–63.

his right to the forum of his choice. And any such waiver carries with it the waiver of any rights or procedures peculiar to state court, such as, *inter alia,* the right to a jury or to special time limits or discovery procedures under state law and state procedural rules.

*Baris,* 932 F.2d at 1547–48; *see also Lewis,* 812 F.Supp. at 627 (noting consequences of invocation of admiralty procedure). The facts in this case compel a similar conclusion with respect to those claims falling within the Court's admiralty jurisdiction: Dao accepted the exercise of admiralty jurisdiction over those claims cognizable as such.

The Court recognizes that Dao acted somewhat inconsistently with the invocation of admiralty jurisdiction, in particular, when he demanded a jury trial in both his original Complaint and, more importantly, in his Amended Complaint. *See Complaint of Consolidation Coal Co.,* 123 F.3d 126, 132 (3d Cir.1997) (noting that because admiralty claims are not brought at common law, Seventh Amendment does not apply to admiralty claims, and that there is no right to a jury trial in admiralty claims), *cert. denied,* —— U.S. ——, 118 S.Ct. 1380, 140 L.Ed.2d 526 (1998); *Concordia Co., Inc. v. Panek,* 115 F.3d 67, 72 (1st Cir.1997) (noting that one important factor in determining whether a claimant has elected to proceed in admiralty is whether he demanded a jury trial); 29 *Moore's Federal Practice* § 704.09[2] (noting relationship between jurisdiction in "saving to suitors" case and right to jury trial); Compl. at p. 9; Amended Compl. at p. 9.

Dao's mere demand for a jury trial, however, does not undo the fact that he permitted the removing Defendants to deprive him of his common law remedies by failing to contest removal of some of his claims on the basis of admiralty jurisdiction. *See Baris,* 932 F.2d at 1547 (holding that plaintiffs "having waived any objection to removal, are deemed to have invoked the district court's admiralty jurisdiction ... [where] there is no alternative basis [for] original federal jurisdiction"); *see also Lirette v. N.L. Sperry Sun, Inc.,* 820 F.2d 116, 117–18 (5th Cir.1987) (when a plaintiff who has selected state forum under "saving to suitors" clause fails to

object to removal, court may determine whether actions amount to waiver to remand); *compare Benjamin,* 793 F.Supp. at 733 (granting plaintiff's motion to remand where defendants improperly removed claims cognizable in admiralty, and finding that plaintiffs had not consented to litigating case in federal court even though plaintiffs had filed amended complaint in federal court); *cf. Wisconsin Dep't of Corrections v. Schacht,* —— U.S. ——, ——–——, 118 S.Ct. 2047, 2055–57, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring) (discussing waiver where state consented to removal to federal court).

Not only did Dao not object to removal, but he also at one point affirmatively invoked admiralty jurisdiction. In opposition to Knightsbridge, Shaw, Eton, and Haywood's motion to dismiss for lack of personal jurisdiction, Dao argued that "[t]his is a claim originally brought in the New Jersey Superior Court, removed to the Federal District Court by request of the current moving parties. *It is a claim in admiralty, giving the court subject matter jurisdiction."* See Dao's Brief in Opposition to Defendants' Motion to Dismiss 3 (dated May 6, 1997) (emphasis added). While this may not be the type of statement which constitutes an election to proceed in admiralty under Rule 9(h) of the Federal Rules of Civil Procedure, at the very least this affirmative invocation of admiralty jurisdiction supports the proposition that Dao's waiver of his common law remedies—accomplished by consenting to Defendant's removal—was knowing and voluntary. *See Foulk v. Donjon Marine Co., Inc.,* 144 F.3d 252, 256–57 (3d Cir.1998) (concluding that plaintiff need not make direct reference to Rule 9(h) to invoke admiralty jurisdiction and that, under circumstances, parties had manifested intent to proceed under admiralty jurisdiction).

■ While the Court "must, whenever possible, strive to preserve the right to a trial by jury," *Concordia,* 115 F.3d at 71, in this case, there is simply no way in which the Court can preserve Dao's right to a jury trial or other remedies and benefits attendant to "saving to suitors" cases for those claims which fall within the Court's admiralty juris-

diction. The Court cannot remand this action to state court because no sua sponte non-jurisdictional remands are permissible beyond the 30–day period established in section 1447(c). Nor can the Court exercise an alternative, *i.e.*, non-admiralty, basis for subject matter jurisdiction because, from the time of removal forward, none has existed.[4]

Accordingly, given Dao's waiver of the improper removal, I need only address the issue of whether the Court can exercise subject matter jurisdiction over this removed case if it had initially been filed in federal court. *See, e.g., Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 457–58 (5th Cir. 1998) (holding that "once a procedural defect in the removal process has been waived, the only question for the district court is whether it 'would have had jurisdiction of the case had it been filed in that court'"); *Korea Exchange*, 66 F.3d at 50 (noting circumstances in which improper removal is jurisdictional). It is this question to which I now turn.

### B. Which of Dao's Claims are Cognizable in Admiralty?

As I stated in my Opinion granting Knightsbridge, Shaw, Eton, and Haywood's motion to dismiss the Amended Complaint for lack of personal jurisdiction, "jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331(1), which provides a federal district court with original jurisdiction over admiralty and maritime matters." 7/3/97 Opinion at 2. I must now expand upon that statement by explicitly deciding which of

Dao's claims are cognizable under the Court's admiralty jurisdiction, and thus, whether this action could have been filed by Dao in this Court. Any of Dao's claims which do not fall within the Court's admiralty jurisdiction may, of course, be cognizable under the Court's supplemental jurisdiction. Those claims will be treated as such and not as admiralty claims. *See, e.g., Huval v. Offshore Pipelines, Inc.*, 1997 WL 86340 (E.D.La. Feb. 26, 1997); *Efferson v. Kaiser Aluminum & Chem. Corp.*, 1992 WL 245901 (E.D.La. Sept. 21, 1992) (holding that where defendant removed action to federal court on the basis of diversity and plaintiff asserted claim against additional non-diverse defendant, court could exercise admiralty jurisdiction over admiralty claims and supplemental jurisdiction over non-admiralty claims).

■ Counts One and Six of the Amended Complaint allege breach of a marine insurance contract against Knightsbridge, Shaw, Eton, and Haywood. *See* Amended Compl. at ¶¶ 1–6, 29–31. Since at least as far back as 1815, such claims have been clearly cognizable in admiralty. *See, e.g., New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1198 (5th Cir.1993); *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1577 (5th Cir.1992); *DeLovio v. Boit*, 7 F. Cas. 418, 444 (C.C.D.Mass.1815) (No. 3776)(Story, J.); *see* 1 *Benedict on Admiralty* § 184 at 12–12; 1 *id.* § 183 at 12–6; 8 *id.* § 1.04[C][5]; 1 *Admiralty & Maritime Law* § 3–10 at 114; 2 *id.* at § 19–1 at 401.

■ Count Three alleges breach of a contract to procure marine insurance against

---

4. None of the parties contends that at the time of removal there was any basis for the Court's jurisdiction other than admiralty jurisdiction. Dao's claims are predicated upon no federal statute and, since the time of the filing of the Complaint in state court and the time of removal, Dao has been a citizen of Virginia, as have Financial Solutions and Haynie. Accordingly, there could never have been either federal question jurisdiction under section 1331 or diversity jurisdiction under section 1332. *See generally* 15 *Moore's Federal Practice* § 102.21 (noting that, in order to remove from state court to federal court on the basis of diversity jurisdiction, diversity of citizenship must exist both at the time of the filing of the original action and at the time of the petition for removal); 16 *id.* at § 107.14[2][d]; *see also* 16 *id.* at § 107.14[2][c][ii] (expressing preference

for view that unserved defendant's citizenship should be considered when that citizenship is clear).

Marine Surveyors argues that, as a result of a change in circumstances, an alternative basis for subject matter jurisdiction does currently exist, diversity jurisdiction. This option is not viable since Dao was and still is a citizen of Virginia, as are Financial Solutions and Haynie, both of whom remain parties to this action. There was no diversity at the time the action was commenced, at the time of removal, or, indeed, now. This is true regardless of the fact that Marine Surveyors has since relocated to Florida, *see* Letter–Brief of Defendant, Marine Surveyors, Inc. 5 (dated Jan. 23, 1998) (hereinafter Marine Surveyors' Letter–Brief).

Financial Solutions and Haynie. *See* Amended Compl. at ¶¶ 17–19. Until the Supreme Court's decision in *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991), such claims were generally held not to fall within a district court's admiralty jurisdiction. *See, e.g., Graham v. Milky Way Barge, Inc.*, 923 F.2d 1100, 1105 (5th Cir.1991); 1 *Benedict on Admiralty* § 185 at 12–20 & n. 12; 2 *Admiralty & Maritime Law* § 19–1 at 401 n. 1. Following *Exxon,* however, there appears to be substantial disagreement as to whether a contract to procure marine insurance falls within a district court's admiralty jurisdiction. *See West Africa Trading & Shipping Co., Inc. v. London Int'l Group, Inc.*, 1996 WL 544234, *5 (D.N.J. June 13, 1996) (noting split among district courts), *report and recommendation rejected on other grounds by* 968 F.Supp. 996 (D.N.J.1997); *see, e.g., Romen, Inc. v. Price–Forbes, Ltd.*, 824 F.Supp. 206, 208 (S.D.Fla.1992) (finding that action against insurance brokers was within admiralty jurisdiction); *In re American Cyanamid Co.*, 1991 WL 197208, *9 n. 3 (E.D.La. Aug.14, 1991).

At least part of the confusion appears to stem from whether agreements to procure marine insurance fell within the *per se* agency contract exception to admiralty jurisdiction, which was repudiated in *Exxon, see Exxon,* 500 U.S. at 611–12, 111 S.Ct. 2071 (overruling *Minturn v. Maynard,* 58 U.S. (17 How.) 477, 15 L.Ed. 235 (1854)), or whether such agreements fell within the *per se* preliminary contract exception to admiralty jurisdiction, which was specifically not addressed by *Exxon, see id.* 500 U.S. at 613 n. 7, 111 S.Ct. 2071 (declining to rule on validity of preliminary contract doctrine). Prior to and after *Exxon,* courts have melded those two closely related doctrines together. *See, e.g., Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 133 (2d Cir.1998) (noting impact of *Exxon* on two distinct *per se* exceptions to admiralty jurisdiction, only one of which is no longer valid); *Illinois Constr. Corp. v. Morency & Assocs., Inc.*, 794 F.Supp. 841, 843 (N.D.Ill.1992) (holding that " 'preliminary contracts' rationale can not [sic] be divorced from the rationale which the Supreme Court rejected in *Exxon* and thus it

no longer controls the inquiry"); *see generally* 1 *Benedict on Admiralty* § 185 at 12–21 to 12–22 (discussing impact of *Exxon*).

The weight of authority is that an agreement to procure marine insurance is within the Court's admiralty jurisdiction. This view is most consistent with *Exxon*'s prescription that the "lower courts should look to the subject matter of the agency contract and determine whether the services performed under the contract are maritime in nature." *Exxon,* 500 U.S. at 612, 111 S.Ct. 2071. Given the historically recognized uniqueness and importance of marine insurance and maritime risks, it cannot be said that the provision of marine insurance is identical or essentially similar to the provision of non-maritime insurance. *See DeLovio,* 7 F. Cas. at 444; *Illinois Constr. Corp.*, 794 F.Supp. at 843; *see also Venezuelan Container Line C.A. v. Navitran Corp.*, 792 F.Supp. 1281 (S.D.Fla. 1991); *but see Planned Premium Servs. of Louisiana, Inc. v. International Ins. Agents, Inc.*, 928 F.2d 164 (5th Cir.1991) (holding that agreement to provide financing for marine insurance is not maritime in nature because it is preliminary). Nor can it be said that the provision of marine insurance is not necessary to the operation, navigation, or management of a ship. *See Ambassador Factors v. Rhein-, Maas-, Und See- Schiffahrtskontor GMBH,* 105 F.3d 1397, 1398–99 (11th Cir.1997). Accordingly, I find that Count Three of the Amended Complaint falls within the Court's admiralty jurisdiction.

■ Count Four alleges breach of a contract to survey the Lady Luck's condition and value against Marine Surveyors and Grumt. See Amended Compl. at ¶¶ 21–25. This claim falls within the Court's admiralty jurisdiction. *See, e.g., Sundance Cruises Corp. v. American Bur. of Shipping,* 7 F.3d 1077, 1081 (2d Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994).

■ Counts Two and Five are both claims that maritime contracts within the Court's admiralty jurisdiction were negligently performed. Specifically, Count Two alleges that Financial Solutions and Haynie negligently failed to perform their contract to provide

adequate insurance for the Lady Luck. *See* Amended Compl. at ¶ 14 (alleging that the denial of insurance coverage "is a direct result of the negligence of Financial Solutions and ... Haynie in failing to assure adequate coverage for the [Lady Luck] as requested by and promised to [Dao]"); *id.* at ¶ 19. Count Five alleges that Marine Surveyors and Grumt negligently failed to provide the survey required by the contract. *See id.* at ¶¶ 24, 27. These tort claims do not fall within the Court's admiralty jurisdiction because the torts did not occur on navigable waters and were not caused by a vessel on those waters. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (setting forth test to invoke federal admiralty jurisdiction over a tort claim); *see generally* 1 Benedict on Admiralty § 171 at 11–2; 1 *id.* § 172 at 11–31 to 11–34. Accordingly, the Court exercises supplemental jurisdictional under 28 U.S.C. § 1367 over Counts Two and Five.

### C. Motion to Transfer

Dao initially moved to transfer this action pursuant to 28 U.S.C. § 1406(a). As I have previously explained, a plaintiff whose action has been removed from state court to federal court should move for transfer of venue pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1631 because the action was not laid in the wrong district, a prerequisite for application of section 1406(a). *See Chicosky v. Presbyterian Med. Ctr.,* 979 F.Supp. 316, 319–20 (D.N.J.1997). Accordingly, I will treat Dao's motion as a motion under section 1404(a) or section 1631, both of which Dao referred to in his reply brief. *See* Dao's Reply Brief in Support of Motion to Transfer (dated Nov. 25, 1997) (hereinafter Dao's Transfer Reply Brief).[5]

█ Section 1404(a) permits transfers "to any other district ... where [a civil action] could have been brought" "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Furthermore, a district court may sever certain

claims under Rule 21 of the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 21 ("any claim against a party may be severed and proceeded with separately"), and then transfer an action as to the severed claims under a change of venue statute, such as section 1404(a), retaining jurisdiction over only some claims. *See Federal Deposit Ins. Corp. v. McGlamery,* 74 F.3d 218, 222 (10th Cir.1996) (transfer order was properly construed as severance order); *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1518–19 (10th Cir.1991) (holding that court must sever case into two entirely separate actions pursuant to Rule 21 in order to retain jurisdiction over one and before transferring the other); *Apache Prod. Co. v. Employers Ins. of Wausau,* 154 F.R.D. 650, 659–61 (S.D.Miss.1994) (concluding that court has authority to sever claims in order to effectuate transfer); *St. Paul Fire & Marine Ins. v. Servidone Constr. Corp.,* 778 F.Supp. 1496, 1507–09 (D.Minn.1991); *see generally* 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 1689 at 478–79 & nn. 10–11 (2d ed. 1986 & Supp.1998); 15 *id.* § 3845 at 351–53 & nn. 27–29; 15 *id.* § 3846 at 363 & n. 19.

█ The sever and transfer procedure is discretionary, but is not likely to be appropriate where "the partial transfer would require the same issues to be litigated in two places." *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 296 (3d Cir.1994) (noting that "when the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion"); *see also Jones v. Trump,* 919 F.Supp. 583, 589 (D.Conn.1996) (severance and transfer was inappropriate where it would force defendant to litigate same issues twice).

█ I find that severance of Counts One, Two, Three, and Six under Rule 21 is in the interests of justice and will result in the most efficient and just resolution of this litigation.

---

5. Inexplicably, Dao continued to invoke section 1406, even after consulting my opinion in *Chico-* *sky. See* Dao's Transfer Reply Brief at 6.

As to severance, as Marine Surveyors suggests, *see* Marine Surveyors' Letter–Brief at 1–3, the question of whether Marine Surveyors and Grumt adequately performed a marine survey (Counts Four and Five) is substantially separate from the questions of whether the loss of the Lady Luck is covered by the Policy issued by Knightsbridge, Shaw, Eton, and Haywood (Counts One and Six), and whether Financial Solutions and Haynie breached their contract, or their duty, to arrange for adequate insurance (Count Two and Three). The conduct of Marine Surveyors and Grumt is not central to the issues raised against Knightsbridge, Shaw, Eton, Haywood, Financial Solutions, and Haynie, and may be separately litigated.[6] Nor would severance of the action and transfer of Counts One, Two, Three, and Six which are alleged against Knightsbridge, Shaw, Eton, Haywood, Financial Solutions, and Haynie, require the same issues to be litigated in two places. Knightsbridge, Shaw, Eton, Haywood, and Marine Surveyors do not argue to the contrary. Indeed, Marine Surveyors argues that it should be permitted to proceed with its defense before this Court. *Id.* at 2.[7]

Transfer to the Eastern District of Virginia pursuant to section 1404(a) is in the interests of justice and will be convenient for the parties. First, Dao will be litigating in his home state, and will much more likely be able to serve process upon Financial Solutions and Haynie, both of whom are residents of Virginia, *see* Amended Compl. at ¶ 8, and neither of whom has appeared in this action. Second, Dao will more likely be able to obtain personal jurisdiction over Knightsbridge, Shaw, Eton, and Haywood in the Eastern District of Virginia, and thus resolve his claims against those parties on the merits. *See generally* Huynh Affidavit at ¶¶ 3, 9 (suggesting substantial contacts between Knightsbridge, Shaw, Eton, and Haywood, and the Eastern District of Virginia). Third, the Eastern District of Virginia appears to have a substantial relation to the action in that Financial Solutions and Haynie, the link between Dao and the Lady Luck, and the insurers, is located in that district. *See* Amended Compl. at ¶ 8. Fourth, the parties have presented no reason why the action either might not have been brought in the Eastern District of Virginia or why the transfer of Counts One, Two, Three, and Six would not be in the interests of justice.[8] Finally, the Federal Rules of Civil Procedure express a liberal approach to the original laying of venue in admiralty cases. *See* Fed. R.Civ.P. 82 ("An admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a civil action for the purposes of Title 28 U.S.C. §§ 1391–93."); *see* 2 *Admiralty & Maritime Law* § 21–10 at 514. Accordingly, I find that severance pursuant to Rule 21 is appropriate. Also, pursuant to section 1404(a), I find that the transfer as a separate action of Counts One, Two, Three, and Six alleged against Knightsbridge, Shaw, Eton, Haywood, Financial Solutions and

---

6. Indeed, Marine Surveyors has already indicated an intent to file a dispositive motion.

7. Dao's motion is equivocal as to which Defendants or Counts it wants to transfer. *Compare* Dao's Transfer Brief at 3 ("Plaintiff now moves to transfer the matter to the Eastern District of Virginia as to ... Knightsbridge, Shaw, Eton, and Haywood") with *id.* at 5–6 ("It is thus appropriate to transfer [Dao's] claims against the insurance defendants, and against Financial Solutions and Haynie, to the Eastern District of Virginia"). I have read Dao's motion as a motion to sever and transfer those Counts of the Amended Complaint which are alleged against Knightsbridge, Shaw, Eton, Haywood, Financial Solutions, and Haynie. Rule 21 authorizes severance by claim, not by defendant. *See* Fed. R.Civ.P. 21.

8. With respect to the transfer, the only arguments made by Knightsbridge, Shaw, Eton, and Haywood are: 1) that Dao's motion to transfer is

in actuality an untimely motion for reargument pursuant to Local Civil Rule 7.1(g); and 2) that "any purported transfer could not exercise jurisdiction over these dismissed defendants." *See* Knightsbridge's Brief in Opposition to Motion to Transfer 3 (dated Oct. 30, 1997); *see also* Marine Surveyors' Brief in Opposition to Motion to Transfer 4 (undated). These arguments have no merit. Dao's motion is not a motion for reargument because it requests relief different from that sought in his cross-motion, *see* 7/3/97 Opinion at 12 n. 2, and it requests relief on an entirely different ground, *see id.* As for Defendants' second argument, it is abundantly clear that a district court may transfer an action to cure a defect in personal jurisdiction. *See Chicosky*, 979 F.Supp. at 320 n. 3. In opposing the motion, Defendants make no argument that transfer would not be in the interests of justice or for the convenience of the parties.

Haynie, to the Eastern District of Virginia is appropriate.[9] I will retain jurisdiction over Counts Four and Five which allege causes of action against Marine Surveyors and Grumt.

## III. Conclusion

For the reasons set forth above, the Court finds that Counts One, Three, Four, and Six of the Amended Complaint are within the Court's admiralty jurisdiction, and Counts Two and Five within the Court's supplemental jurisdiction under 28 U.S.C. § 1367. The Court will sever Counts One, Two, Three, and Six of the Amended Complaint which allege causes of action against Knightsbridge, Shaw, Eton, Haywood, Financial Solutions, and Haynie, and transfer those claims as a separate action to the Eastern District of Virginia. The Court will retain jurisdiction over Counts Four and Five which allege causes of action against Marine Surveyors and Grumt. The Court will also dismiss as moot Dao's motion for entry of final judgment pursuant to Rule 54(b). The Court will enter an appropriate order.

## ORDER

This matter having come before the Court on the motion of Plaintiff, Thao Dao, Thomas Rossi, Esq. of Rossi, Barry, Corrado, Grassi & Radell, P.C. appearing, to transfer this action to the Eastern District of Virginia as to Defendants, Knightsbridge International Reinsurance Corporation, Shaw International, Eton Management Corporation, and Graham Haywood, Scott A. Lazar, Esq. and James E. Mercante, Esq. of Kroll & Tract, L.L.P., appearing, and as to Defendants, Financial Solutions, Inc. and Jim Haynie, or, in the alternative, for the entry of final judgment pursuant to Rule 54(b) of the Federal

Rules of Civil Procedure, and Gerard H. Hanson, Esq. of Hill Wallack appearing on behalf of Defendant, The Marine Surveyors, Inc.; and

The Court having considered the pleadings and the submissions of the parties; and

For the reasons set forth in an OPINION filed concurrently with this ORDER,

IT IS ORDERED on this 5th day of August, 1998, that Plaintiff's motion to transfer be, and hereby is, GRANTED; and

IT IS FURTHER ORDERED that, pursuant to Rule 21 of the Federal Rules of Civil Procedure, Counts One, Two, Three, and Six of the Amended Complaint be, and hereby are, SEVERED; and

IT IS FURTHER ORDERED that Counts One, Two, Three, and Six of the Amended Complaint be, and hereby are, DEEMED A SEPARATE ACTION; and

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1404(a), Counts One, Two, Three, and Six of the Amended Complaint be, and hereby are, TRANSFERRED TO THE EASTERN DISTRICT OF VIRGINIA; and

IT IS FURTHER ORDERED that this Court RETAIN JURISDICTION over Counts Four and Five of the Amended Complaint; and

IT IS FURTHER ORDERED that Plaintiff's motion for the entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure be, and hereby is, DISMISSED AS MOOT.

---

9. Because I will transfer certain Counts of the Amended Complaint, I need not rule upon Dao's motion for entry of final judgment pursuant to Rule 54(b), and that motion will be dismissed as moot.

I note finally that it may seem somewhat odd that I extensively address the question of this Court's admiralty jurisdiction over certain of Dao's claims, but ultimately decide to transfer some of those claims. At least since the Supreme Court's recent decision in *Steel Co. v. Citizens for a Better Environment,* — U.S. —, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), a district court may not assume "hypothetical juris-

diction." *Id.* — U.S. —, 118 S.Ct. at 1012. Rather, the district court must first squarely address the question of subject matter jurisdiction before treating the case on its merits. *Id.* — U.S. —, 118 S.Ct. at 1012–16. While the split among the justices of the Supreme Court suggests that this may not exactly be an unbending rule, *see, e.g., id.* — U.S. —, 118 S.Ct. at 1020 (O'Connor, J., concurring); *id.* — U.S. —, 118 S.Ct. at 1020–21 (Breyer, J., concurring in part and in the judgment), the better practice is not "to test the outer limits of the [Supreme] Court's tolerance," *see Hardemon v. Boston,* 144 F.3d 24, 26 (1st Cir.1998).